# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              Case No.   22-cv-10568

FLINT NEUROLOGICAL CENTRE P.C.

    Defendant.

                                                    **DEMAND FOR JURY TRIAL**

_____/

## PLAINTIFF'S COMPLAINT

The United States of America alleges the following:

## NATURE OF THE ACTION

1. This action is brought by the United States against Flint Neurological Centre P.C. to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12188, and the United States Department of Justice's regulations implementing the ADA, 28 C.F.R. Part 36.

2. Defendant Flint Neurological Centre P.C. ("FNC") has repeatedly failed to ensure that individuals who are deaf or hard of hearing are afforded opportunities to participate in or benefit from FNC's services and facilities that are equal to those

1

opportunities afforded others.

3. The United States Attorney General has determined that Defendant has engaged in a pattern or practice of discrimination under Title III of the ADA, 42 U.S.C. § 12188(b)(1)(B)(i), and its implementing regulation at 28 C.F.R. § 36.503(a), and that Defendant's discrimination against persons who are deaf or hard of hearing raises an issue of general public importance under 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 12188(b)(1)(B) & (b)(2) and 28 U.S.C. §§ 1331 and 1345. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391, because the claims arose in the Eastern District of Michigan.

## THE PARTIES

6. Plaintiff is the United States of America.

7. Defendant FNC is a medical practice of neurology physicians, which owns, leases, or operates a professional corporation located at all relevant times at 5082 Villa Linda Parkway in Flint, Michigan.

8. Defendant FNC's office is a place of public accommodation under 42

U.S.C. § 12181(7)(F) and 28 C.F.R. § 36.104 because it is a professional office of a health care provider and its operations affect interstate commerce.

9. FNC's resident agent is Nael Tarakji, M.D., and the practice includes five other physicians who are listed as shareholders in a recent filing with the Michigan Department of Licensing and Regulatory Affairs: Mouaz Sbei, M.D., Mohammed Sabbagh M.D., Mohammed Al-Qasmi, M.D., and Mahmoud Shaqfeh, M.D.

## FACTUAL ALLEGATIONS

10. FNC has repeatedly failed to provide American Sign Language interpreters or any other appropriate auxiliary aids or services necessary for effective communication with new and existing patients who are deaf or hard of hearing despite multiple requests from the patients, as well as their families and caregivers.

## COMPLAINANTS

### Brian Grindel

11. Brian Grindel is a 50-year-old resident of Clio, Michigan.  Mr. Grindel is deaf and a person with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102, and its implementing regulation at 28 C.F.R. § 36.105.

12. Mr. Grindel uses American Sign Language ("ASL") as his primary means of communication.

3

13. ASL has a unique syntax and structure pattern and does not correlate one-to-one with written or spoken English.

14. Although Mr. Grindel has some limited ability to read lips and to read and write English, ASL is his primary language and he cannot effectively communicate via lipreading or written English when discussing complicated matters such as health care treatment options, diagnoses, and treatment.

15. Mr. Grindel's primary care physician referred him for treatment to Dr. Mohammed Sabbagh, one of FNC's physicians.

16. Mr. Grindel has remained under Dr. Sabbagh's care since at least 2018.

17. Mr. Grindel estimates that he has seen Dr. Sabbagh for treatment eight to ten times over the last few years.

18. For each visit, Mr. Grindel has requested a sign language interpreter.

19. Mr. Grindel's mother, aunt, and Faye Mannion, a Genesee County case manager who helps to coordinate his medical care, have also repeatedly requested an interpreter for Mr. Grindel's appointments with Dr. Sabbagh, both by asking FNC staff and Dr. Sabbagh directly.

20. Mr. Grindel has never been provided a qualified interpreter by FNC.

21. On several occasions throughout 2018, 2019, and 2020, Mr. Grindel's aunt drove more than 200 miles from her home in Charlevoix, Michigan, to attend

Mr. Grindel's appointments with him because of her concerns about communication at his appointments.

22. At an appointment in 2019, Dr. Sabbagh prescribed a new medication. Because there was no sign language interpreter present, Mr. Grindel did not understand the doctor's explanation of what the medication was for, and so he delayed starting the medication for more than two weeks, until his aunt was able to explain to him why the medication was prescribed.

23. On May 9, 2019, Mr. Grindel's case manager attended an appointment with Mr. Grindel and witnessed an additional communication failure involving Mr. Grindel's medication. At that appointment, Dr. Sabbagh was prescribing a new medication that was extended release, which Mr. Grindel would not need to take it as frequently as he had previously. But Dr. Sabbagh engaged with Mr. Grindel solely by talking loudly and Mr. Grindel did not understand what the doctor was telling him about the new prescription.

24. The case manager alerted Dr. Sabbagh that Mr. Grindel did not understand him and requested an interpreter, but Dr. Sabbagh did not acknowledge her comment.

25. As Mr. Grindel and she were leaving the office, the case manager asked a member of FNC's office staff about their procedure for requesting an interpreter

5

and was advised that the doctor is typically notified of the need for an interpreter, but nothing more occurs.

26. Mr. Grindel remains a patient of FNC and Dr. Sabbagh. He has never been provided a qualified interpreter, or any appropriate auxiliary aid or service, at any of his appointments.

### Gaida Mannion

27. Gaida Mannion is a 67-year-old resident of Saginaw, Michigan. Ms. Mannion has been deaf since birth and is a person with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102, and its implementing regulation at 28 C.F.R. § 36.105.

28. Ms. Mannion uses ASL as her primary means of communication. ASL is her primary language, and she cannot effectively communicate via lipreading or written English when discussing complicated matters such as health care treatment options, diagnoses, and treatment.

29. Ms. Mannion's primary care physician referred her to Dr. Mouaz Sbei, one of FNC's physicians.

30. Ms. Mannion's primary care physician scheduled the appointment, notified FNC that his patient was deaf, and requested an interpreter.

31. Ms. Mannion sought an interpreter for this initial appointment with Dr. Sbei because she wanted to discuss her new treatment. She hoped to ask him about any possible side effects and frequency of her treatment. Ms. Mannion also needed an interpreter to discuss her symptoms, medical conditions, and medical history with Dr. Sbei.

32. On June 5, 2018, Ms. Mannion drove approximately 40 miles from her home in Saginaw to Flint for the appointment. She inquired about an interpreter when she arrived at FNC, but none was present. Ms. Mannion waited 45 minutes and then eventually left without treatment because it did not appear that any efforts were being made to obtain an interpreter.

33. Fay Mannion, Gaida Mannion's daughter, called and spoke with the FNC office manager. The office manager told her they were "working on getting an interpreter." Fay Mannion left her phone number but did not receive a return call from anyone at FNC. She called FNC the following Monday and was again told they were working on getting the interpreter.

34. Gaida Mannion never saw a doctor at FNC, nor did she get any kind of treatment.

35. Since she could not get an interpreter for the appointment at FNC, Ms. Mannion returned to her primary care physician who continues to try other

7

treatments for Ms. Mannion's health condition; however, none have been successful, and she continues to experience painful symptoms.

### Roberta Clawson

36. Roberta Clawson is an 84-year-old resident of Swartz Creek, Michigan. Clawson is deaf and a person with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102, and its implementing regulation at 28 C.F.R. § 36.105. Her daughter, Theresa Miracle, is Ms. Clawson's medical advocate.

37. Ms. Clawson uses ASL as her primary means of communication and cannot effectively communicate via lipreading or written English when discussing complicated matters such as health care treatment options, diagnoses, and treatment.

38. In September 2019, Ms. Clawson's primary care physician referred her to Dr. Mohammed Sabbagh at FNC.

39. Theresa Miracle scheduled her mother's first appointment at FNC for September 17, 2019 and requested an ASL interpreter for the appointment.

40. Ms. Clawson's granddaughter, Jessica Kales, accompanied her to the appointment. Once with the doctor, Ms. Kales and Ms. Clawson inquired about the ASL interpreter they had requested but were told that no interpreter was available. As Ms. Clawson had not previously been treated by Dr. Sabbagh or any other doctor at FNC, she needed an interpreter to discuss her symptoms, medical condition,

8

medications, and medical history.

41.     Dr. Sabbagh asked Ms. Kales to interpret during the appointment. Ms. Kales is hard of hearing but reads lips; she does not communicate primarily through ASL. Ms. Kales told the doctor that she could not interpret for her grandmother and reiterated her request for an interpreter for this and future appointments. The doctor continued the appointment without an interpreter.

42.     With no other options, Ms. Kales interpreted as best as she could during her grandmother's appointment by trying to read Dr. Sabbagh's lips and then communicating what she thought the physician said to her grandmother using ASL.

43.     During the appointment, Dr. Sabbagh did not attempt to gesture or write notes to communicate with Ms. Clawson. Instead, Dr. Sabbagh asked Ms. Kales to explain her grandmother's symptoms. The doctor also relied on Ms. Kales to provide instructions to Ms. Clawson for diagnostic tests.

44.     Dr. Sabbagh scheduled Ms. Clawson for an electroencephalogram test as well as a follow-up appointment. Both appointments were scheduled for October 1, 2019. Theresa Miracle contacted FNC the day before the appointments to again request an ASL interpreter for her mother. FNC indicated that an interpreter would be present.

45.      Ms. Clawson and Ms. Kales arrived for the appointments on October 1,

but there was no interpreter present. The appointments were rescheduled for October 16, 2019, to allow FNC to get an interpreter. Ms. Miracle again called the day before the appointments to confirm that an interpreter would be provided, and FNC's receptionist indicated that an interpreter would be present for both appointments.

46. On October 16, 2019, Ms. Clawson and Ms. Kales arrived for the appointments, but again, no interpreter was provided. At this point, Ms. Miracle determined that her mother could not be treated at FNC because her mother could not communicate with the doctor.

47. Ms. Clawson became very agitated and emotional during the repeated trips and long waits at FNC's offices.

48. Ms. Clawson did not receive treatment from a neurologist in 2019 because of the failed attempts to access health care services from FNC.

49. In April 2021, Ms. Clawson was hospitalized. The hospital referred Ms. Clawson back to FNC, and Theresa Miracle called to schedule a new appointment. FNC staff assured Ms. Miracle that an interpreter would be provided. Miracle's husband, who is also deaf, took Ms. Clawson to the scheduled appointment, but again no interpreter was provided. Ms. Clawson left FNC because no interpreter was provided and still has not received treatment for her most recent

diagnosis.

### Anquon Rush

50.     Anquon Rush is a 41-year-old resident of Flint, Michigan. Mr. Rush is deaf and a person with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102, and its implementing regulation at 28 C.F.R. § 36.105.

51.     Mr. Rush uses ASL as his primary means of communication and cannot effectively communicate via lipreading or written English when discussing complicated matters such as health care treatment options, diagnoses, and treatment.

52.     In 2013, after Mr. Rush was released from the hospital following an assault, he began treatment with Dr. Sbei at FNC.

53.     Mr. Rush generally has an appointment with Dr. Sbei every three months.

54.     These quarterly appointments mostly consist of a review of Mr. Rush's symptoms and a discussion of the medications that he is taking for treatment. Sarah Shaw, a Genesee Health case manager who coordinates Mr. Rush's medical care, has made multiple requests to FNC for an interpreter for him, but FNC has never provided an interpreter.

55.     Dr. Sbei has repeatedly requested that Ms. Shaw, who herself is hard of hearing and communicates primarily through ASL, interpret for the appointments.

Ms. Shaw does not believe that it is appropriate for her to serve as Mr. Rush's interpreter because it conflicts with her role as his case manager. However, due to Mr. Rush's many limitations, Ms. Shaw has often acquiesced to these requests and interprets to the best of her ability so that Mr. Rush can have limited communication when he receives treatment.

56. Dr. Sbei has not attempted to communicate with Mr. Rush by writing notes or gesturing.

57. Mr. Rush continues to be treated by Dr. Sbei and FNC, but FNC has never provided Mr. Rush with a qualified interpreter.

### Brenda Lanning

58. Brenda Lanning is a 67-year-old resident of Swartz Creek, Michigan. Ms. Lanning is deaf and a person with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102, and its implementing regulation at 28 C.F.R. § 36.105.

59. Ms. Lanning uses ASL as her primary language and cannot effectively communicate via lipreading or written English when discussing complicated matters such as health care treatment options, diagnoses, and treatment.

60. Ms. Lanning began her treatment with Dr. Sbei at FNC in 2015. Ms. Lanning has had several appointments with Dr. Sbei since 2015 and has never had an interpreter present despite multiple requests.

61.     Ms. Lanning eventually stopped asking for an interpreter because she believes that it is a waste of time since FNC never provides one. Dr. Sbei sometimes tried to communicate with Ms. Lanning by gesturing, and once wrote notes back and forth with her. However, neither gesturing nor writing notes were effective for Ms. Lanning.

62.     Ms. Lanning's last appointment at FNC was in 2019.

63.     While some of Ms. Lanning's appointments were brief in nature, many of her other appointments were more complex where she needed an interpreter to discuss her symptoms and medical history.

64.     Ms. Lanning was not able communicate with Dr. Sbei about the efficacy and prognosis of the treatments that she was receiving from him. Without an interpreter, Ms. Lanning feels that she cannot ask questions about her treatment because Dr. Sbei will not be able to understand her.

## CAUSE OF ACTION

## Title III of the Americans with Disabilities Act

65.     The allegations above are incorporated by reference. FNC has discriminated against a person or group of persons in violation of Title III of the ADA and FNC is engaged in a pattern or practice of discrimination in violation of Title III of the ADA, 42 U.S.C. § 12188(b).

66. Brian Grindel, Gaida Mannion, Roberta Clawson, Anquon Rush, and Barbara Lanning are individuals with disabilities within the meaning of Title III of the ADA, 42 U.S.C. §§ 12181-12188, and its implementing regulation at 28 C.F.R. Part 36.

67. FNC discriminated against individuals on the basis of disability in the provision of goods, services, facilities, privileges, advantages and accommodations of a public accommodation, under section 302 of the ADA, 42 U.S.C. § 12182, and its implementing regulations at 28 C.F.R. pt. 36, by *inter alia*:

    (a) failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) and its implementing regulation at 28 C.F.R. § 36.303; and

    (b) failing to afford individuals with disabilities who are deaf or hard of hearing with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and its implementing regulation at 28 C.F.R. § 36.202(b); and

    (c) failing to furnish appropriate auxiliary aids in services to ensure

effective communication to individuals with disabilities in violation of 42 U.S.C. § 12182(b)(2)(A)(iii), and its implementing regulation at 28 C.F.R. § 36.303(c)(1); and

(d)     requiring individuals with disabilities to bring to bring another individual to interpret for him or her in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) and its implementing regulation at 28 C.F.R. §36.303(c)(2) and (3).

68.     Brian Grindel, Gaida Mannion, Roberta Clawson, Anquon Rush, Barbara Lanning, and other individuals with disabilities who use sign language for communication and rely upon other auxiliary aids and services have been harmed by FNC and will continue to be harmed if they return to FNC unless FNC is required to provide effective communication and otherwise comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-12188, and its implementing regulation at 28 C.F.R. Part 36.

THEREFORE, the United States of America requests that this Court grant the following relief:

(a)     declare that the discriminatory practices, policies, and procedures of Defendant as set forth above, violate Title III of the ADA, 42 U.S.C. §§ 12181-12188, and the U.S. Department of Justice's implementing regulation, 28 C.F.R. Part

15

36.

(b) award monetary damages to Brian Grindel, Gaida Mannion, Roberta Clawson, Anquon Rush, Barbara Lanning, and any other individuals harmed by FNC's discrimination as aggrieved persons to compensate them for injuries resulting from such discrimination, including damages for emotional distress, pain, and suffering.

(c) assess a civil penalty against Defendant as authorized by 42 U.S.C. § 12188(b)(2)(C) to vindicate the public interest; and

(d) order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

DAWN N. ISON
United States Attorney
Eastern District of Michigan

s/ Shannon M. Ackenhausen
SHANNON M. ACKENHAUSEN (P83190)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9730
Facsimile: (313) 226-3211
Shannon.Ackenhausen@usdoj.gov

s/ Michael El-Zein
MICHAEL EL-ZEIN
(P79182)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9770
Facsimile: (313) 226-3211
michael.el-zein@usdoj.gov

Dated: March 17, 2022